IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**CHRISTOPHER LEE RENEAU**,

    Plaintiff-Appellant,        **Case No. 6:19-cv-01267-MC**

  v.               **OPINION AND ORDER**

**WELLS FARGO BANK, N.A.,**

    Defendant-Appellee.
_____

**MCSHANE, Judge**:

  Plaintiff-Appellant Christopher Lee Reneau appeals the final decision of the U.S. Bankruptcy Court for the District of Oregon granting Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment. This Court has jurisdiction under 28 U.S.C. § 158. The issue before this Court is whether Reneau raised a genuine issue of material fact as to why Wells Fargo terminated his employment. Reneau argues that Wells Fargo unlawfully discriminated against him under 11 U.S.C. § 525 by terminating his employment solely because of his bankruptcy, insolvency, or failure to pay dischargeable debt. Wells Fargo responds that it lawfully terminated Reneau for failing to meet loan originator qualifications under Regulation Z of the Truth in Lending Act. Because Reneau did not raise a genuine issue of material fact, the Bankruptcy Court's decision granting summary judgment is AFFIRMED.

1 – OPINION AND ORDER

**BACKGROUND**

Wells Fargo is a loan originator organization subject to regulations under the Truth in Lending Act. Regulation Z of the Truth in Lending Act imposes loan originator qualifications, which require organizations to ensure that their loan originator employees meet certain standards having to do with financial responsibility. When an organization becomes aware, based on "reliable information known," that a loan originator employee likely does not meet these qualifications, the organization must obtain the employee's criminal background check, credit report, and information from the Nationwide Mortgage Licensing System and Registry. 12 C.F.R. § 1026.36(f)(3)(i)(A)–(C). With this information and any other information reasonably known to the organization, it must then determine whether the employee has demonstrated the "financial responsibility, character, and general fitness such as to warrant a determination that the individual loan originator will operate honestly, fairly, and efficiently." 12 C.F.R. § 1026.36(f)(3)(ii)(B).

Wells Fargo has written procedures to ensure compliance with Regulation Z. When there is reliable information known ("RIK") to Wells Fargo that suggests a loan originator employee does not meet the loan originator qualifications, a Financial Fitness Team ("FFT") reviews the RIK to determine whether the employee continues to meet the qualifications. The FFT includes a voting committee comprised of three members. To make its determination on the employee's financial fitness, the voting committee refers to Wells Fargo's New Loan Originator Delegation Guidelines. The guidelines include considerations like the reason for a credit delinquency, the debt amount, and any circumstances the employee may have submitted for consideration. ER 244, 247. Not all RIKs are subject to FFT review; for example, if a credit report shows a single bankruptcy that is greater than three years old with no other criteria present, the FFT system

automatically approves the employee without a manual evaluation. ER 261. Additionally, the FFT will approve an employee with an active Chapter 13 bankruptcy without escalating the case to the voting committee if the employee has a history of two or more years of successful payments. *Id.*

Reneau worked as a personal banker—i.e., a position subject to loan originator qualifications under Regulation Z—with Wells Fargo since 2012. ER 260, 307. Reneau filed for Chapter 13 bankruptcy on March 6, 2018. ER 346. On September 22, 2018, Wells Fargo received notification of a wage order to satisfy payments under Reneau bankruptcy plan. ER 272. A notification of this type qualified as RIK and, consequently, the FFT notified Reneau that it would perform a financial fitness review to ensure that he continued to meet the loan originator qualifications. ER 261–62, 274–75. An Operational Risk Consultant corresponded with Reneau multiple times over the next few weeks to obtain information for the FFT, including an explanation of why he filed for bankruptcy and why he fell behind on his bankruptcy payments. ER 262, 276–80.

The consultant presented a case summary to the FFT voting committee and, instead of voting to approve or deny, the voting committee members requested more information from Reneau. ER 262. Specifically, the voting committee sought an explanation of a $30,000 debt to Verizon and Reneau's reason for filing for bankruptcy. *Id.* Reneau explained that the Verizon account was his ex-wife's personal bill and he filed for bankruptcy because of a $100,000 medical expense from his ex-wife and because he needed to get caught up on personal bills. ER 279, 295. The consultant presented Reneau's case to the voting committee a second time, including the new information he provided, and the voting committee unanimously voted to deny Reneau as failing to meet the loan originator qualifications. ER 263. As a result, Reneau was

removed from his loan originator position and placed on an unpaid job-search leave for six months. ER 211–12. Reneau resigned his employment with Wells Fargo three months later. Appellee's Br. 11.

Reneau then filed a complaint alleging that Wells Fargo unlawfully discriminated against him under 11 U.S.C. § 525 by terminating his employment solely because of his bankruptcy, insolvency, or failure to pay dischargeable debt. Wells Fargo moved for summary judgment, arguing that the undisputed evidence showed it lawfully terminated Reneau's employment for failing to meet loan originator qualifications. After the Bankruptcy Court granted Wells Fargo's Motion for Summary Judgment, Reneau timely filed a notice of appeal seeking judicial review of the Bankruptcy Court's decision.

## **STANDARD OF REVIEW**

This Court reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law de novo. *In re Filtercorp, Inc. v. Gateway Venture Partners III, L.P.*, 163 F.3d 570, 576 (9th Cir. 1998). On appeal of a grant of summary judgment, this Court must determine whether any genuine issues of material fact exist and whether the Bankruptcy Court correctly applied the relevant substantive law. *Id.* at 578. An issue is "genuine" if a reasonable jury could find in favor of the nonmoving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* This Court views evidence in the light most favorable to the nonmoving party. *In re Filtercorp*, 163 F.3d at 578. But the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to avoid summary judgment. *Anderson*, 477 U.S. at 252. Uncorroborated allegations and "self-serving

testimony" are also insufficient. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

## **DISCUSSION**

The Bankruptcy Code prohibits a private employer from terminating an employee "solely because" the employee is or has been bankrupt or a debtor, has been insolvent, or has not paid a dischargeable debt. 11 U.S.C. § 525(b). To maintain a cause of action under 11 U.S.C. § 525(b), a plaintiff must demonstrate that one of these reasons "provided the *sole* reason for termination." *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1269 (9th Cir. 1990). As the inquiries leading to Reneau's termination all revolved around his Chapter 13 bankruptcy, it may appear at first glance that Wells Fargo terminated Reneau because of his bankruptcy, insolvency, or failure to pay dischargeable debt. However, the evidence shows that Wells Fargo evaluated Reneau's financial situation after reliable information became known to Wells Fargo that called into question Reneau's financial fitness. Ultimately, Wells Fargo lawfully terminated Reneau for failing to meet loan originator qualifications.

As a loan originator organization, Wells Fargo has policies and procedures in place to meet the requirements of Regulation Z. Among these procedures is a multi-level review process that evaluates the circumstances of a loan originator employee's financial situation when the employee's financial fitness is called into question. Here, after Wells Fargo received notification of a wage order from Reneau's bankruptcy, the FFT voting committee reviewed Reneau's case on two separate occasions, requesting additional information from him, and allowed him to provide any explanation and documentation to support his case. *See* ER 262–63, 354–57. In a series of emails, Reneau explained that the $30,000 Verizon debt was his ex-wife's personal account and that he filed for bankruptcy because of a $100,000 medical expense from his ex-wife

going to rehab and to get caught up on personal bills. ER 279, 295. Voting committee member John Hauer recalled the $30,000 Verizon debt coming up in a case review because "the amount was so unusually high." ER 245.

> I wondered whether the debt related to a personal account, (which suggested to me financial irresponsibility), or a business account. I also recall reviewing a Case Summary where the loan originator identified a $100,000 medical debt as a reason for bankruptcy, but there was no medical debt in the bankruptcy schedules.

*Id.*

Debra Mitchell, another voting committee member, explained the voting committee's ultimate decision to deny Reneau as failing to meet loan originator qualifications. ER 253–54. "[T]he information [Reneau] provided about the reason for bankruptcy did not appear to match the information submitted to the bankruptcy court." ER 254. Ms. Mitchell noted that "there was no apparent inability to work, and no medical debt in the bankruptcy schedules. . . . [T]here were multiple reasons given for the bankruptcy, but no clear major life event that was the cause, and a lack of financial responsibility seemed to be the more likely cause." ER 253–54. Indeed, Reneau testified that his wife at the time told him about a medical debt she owed for rehab, but he is unsure whether he ever saw a bill relating to the debt. ER 222–23.

Although the FFT's review of Reneau occurred because of his bankruptcy, his termination did not. Although Wells Fargo received notice of Reneau's bankruptcy as a creditor when he initially filed in March 2018, the FFT's review of Reneau did not occur until six months later when he fell behind on his bankruptcy repayment plan. *See* ER 280, 337, 346. This, along with Reneau's participation in the review process, where the voting committee considered not just his filing of bankruptcy, but the circumstances that led to it, suggests that Wells Fargo did not terminate Reneau solely because of his bankruptcy. Rather, the voting committee questioned Reneau's credibility due to the $100,000 medical debt—cited by Reneau as a reason for filing for

6 – OPINION AND ORDER

bankruptcy—missing from his bankruptcy schedules, and believed Reneau's $30,000 debt to Verizon demonstrated financial irresponsibility. ER 245, 253–54, 300–01. Wells Fargo's practice of automatically approving employees with a bankruptcy older than three years further supports the conclusion that it does not terminate employees solely because of bankruptcy, insolvency, or failure to pay a dischargeable debt. In fact, since 2017, Wells Fargo approved 79.05% of its loan originator employees with a RIK related to bankruptcy. ER 230–32.

Reneau argues that the consultant's notes that listed "recently filed for Chapter 13 bankruptcy" as the only "con" in his case summary suggests that Wells Fargo terminated him solely because of his bankruptcy and creates a genuine issue of material fact. However, the consultant specifically stated that she only uses these notes for her reference as she presents case summaries to the voting committee. ER 262. Further, she used the "Observations" section of her notes during her meeting with the voting committee and, notably, she included the pros and cons under the "Detailed summary" section of her notes, not under "Observations." ER 262, 282.

Wells Fargo's LOQ Guidelines for Preparing a Case Summary confirm that the "Observations" section is used to present to the voting committee while the "Detailed summary" section is available to the voting committee if needed. ER 266. Yet, even if the consultant showed the voting committee the pros and cons in her notes, this does not overcome the wealth of evidence showing that the voting committee considered multiple factors involving Reneau's financial fitness, not solely his filing of bankruptcy. Reneau's testimony that he believes Wells Fargo terminated him solely because of his bankruptcy is also insufficient to create a genuine issue of material fact. *See Villiarimo*, 281 F.3d at 1061 (uncorroborated and self-serving testimony is insufficient to overcome summary judgment).

Despite the overwhelming amount of evidence indicating that Wells Fargo did not terminate Reneau solely because of his bankruptcy, he argues still that the Bankruptcy Court erred in granting summary judgment because very little evidence is required to survive summary judgment in employment discrimination cases. Appellant's Br. 9, ECF No. 7. While this is true of employment discrimination under the Civil Rights Act and Title VII, employment discrimination within the Bankruptcy Code is subject to a different standard. *See White v. Kentuckiana Livestock Market, Inc.*, 397 F.3d 420, 426 (6th Cir. 2005). This Court finds the Sixth Circuit's explanation of this persuasive:

> [T]he decision of Congress to include the words "solely because" in § 525(b) makes it harder for a plaintiff to prove bankruptcy discrimination than to prove discrimination on the basis of race, or sex, or age. The words "solely because" are conspicuous by their absence in Title VII and the Age Discrimination Act, however, and it would not have been irrational for Congress to conclude, as a policy matter, that claimants in bankruptcy discrimination cases should be required to prove more than claimants in race, or sex, or age discrimination cases are required to prove. Bankruptcy is different; there is not much one can do about his race, or sex, or age, after all, but bankruptcy, while sometimes the result of catastrophic events over which the bankrupt has no control, often results from conduct as to which the bankrupt had a measure of choice.

*Id.*

At the summary judgment stage, Reneau argued that Wells Fargo's given reasons for terminating Plaintiff were pretextual. ER 333–42. The familiar burden-shifting framework to show pretext laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is typically present in employment discrimination cases, but it is unclear whether it applies to actions under 11 U.S.C. § 525(b). *See In re Banner*, 422 B.R. 608, 612 (Bankr. N.D. Tex. 2009) (burden-shifting to show pretext done in Title VII cases is generally not done in cases under § 525(b)). *But see White*, 397 F.3d at 427 ("Assuming, without so deciding, that there may be occasions where use of the *McDonnell Douglas* approach would be required in the trial of a § 525(b) case,

the present case clearly does not present such an occasion.").

Even assuming the burden-shifting applies here, Reneau does not demonstrate that Wells Fargo's reasons for terminating him were pretextual. When an employer gives a legitimate, non-discriminatory reason for its adverse action, the burden shifts to the plaintiff to come forward with "specific and substantial" evidence that the given reason is pretextual or "'unworthy of credence.'" *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658–59 (9th Cir. 2002) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000)).

Reneau argued that nothing indicates that the voting committee denied him because of his Verizon debt or the missing $100,000 medical debt. ER 421–22. Yet, the voting committee specifically asked for more information about these two things after its first review of Reneau's case. ER 262. Reneau has since claimed that the amount of the Verizon debt was a typo, but he did not submit evidence of this to the voting committee, nor did he correct the bankruptcy schedules. *See* ER 226, 349. Instead, Reneau merely stated the debt was a personal debt, and not a business debt. As noted, the committee viewed a large personal debt like this, as opposed to a large business debt, a red flag.

Further, Reneau submitted no evidence to substantiate the $100,000 medical debt, which he claimed as a reason for filing bankruptcy (though no such debt appeared on the bankruptcy schedules). ER 233, 279, 422–23. Although Reneau provided written explanations of these issues, clearly it was not enough to overcome the voting committee's doubt of his financial responsibility and credibility. Whether the voting committee was correct in its decision is immaterial to the issue before this Court. Reneau submitted no evidence that calls into question the believability of the voting committee's concerns sufficient to show pretext.

In addition to disputing the Bankruptcy Court's decision to grant summary judgment, Reneau disputes three of the Bankruptcy Court's factual findings: (1) that he did not answer or respond to certain issues the voting committee raised, (2) that there was no evidence explaining the amount of the Verizon debt, and (3) that there was no evidence in the record of any medical debt. This Court reviews the Bankruptcy Court's factual findings for clear error. *In re Filtercorp*, 163 F.3d at 576. "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "If the [lower] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing] court [] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 573–74.

This Court finds that none of the Bankruptcy Court's factual findings were clearly erroneous. Reneau argues that an email from Debra Mitchell confirms that he "provided the information the Financial Fitness team had requested." Appellant's Br. 6; E.R. 339, 360. He also argues that he provided evidence of the Verizon debt and medical debt. Appellant's Br. 6–8. Despite Ms. Mitchell's email, it was plausible for the Bankruptcy Court to find that Reneau did not fully respond to certain issues raised by the voting committee, as he merely provided written explanations, rather than physical evidence, to answer some of the voting committee's inquiries. *See* ER 279, 295, 354–57. It was also plausible for the Bankruptcy Court to find that there was no evidence explaining the amount of the Verizon debt because Reneau responded to the voting committee's inquiry only by claiming in an email that it was his ex-wife's personal account. ER

295 ("The Verizon account is from Kasandra Duren going default on her personal bill[.]"). Although Reneau now claims that the amount is a typo, he did not submit evidence of this to the voting committee. *See* Appellant's Br. 6–7; ER 226, 349. Finally, it was plausible for the Bankruptcy Court to find that there was no evidence in the record of any medical debt because, again, Reneau provided only a written explanation of the medical debt to the voting committee and no physical evidence to substantiate that it ever existed. ER 233, 279. As noted, no such debt appeared on Reneau's bankruptcy schedules. Therefore, the Bankruptcy Court's three factual findings were not clearly erroneous.

## **CONCLUSION**

For these reasons, the Bankruptcy Court's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 23rd day of December, 2019.

                                  **/s/ Michael McShane**
                                  **Michael J. McShane**
                                  **United States District Judge**